**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| Susan Catherine Edgerton,<br><br>Plaintiff,<br><br>v.<br><br>Shedd Aquarium Society d/b/a John G. Shedd Aquarium,<br><br>Defendant. | Case No. 1:21-cv-2443 |

**COMPLAINT AND JURY DEMAND**

Plaintiff Susan Catherine Edgerton, through her counsel, Salvatore Prescott Porter & Porter, PLLC, brings this complaint against her former employer, Defendant Shedd Aquarium Society, and states as follows:

**Introduction**

1. Plaintiff brings this action under Title VII, the Jones Act, and general maritime law for injuries—both physical and emotional—that she sustained as the first and only woman to serve aboard the Coral Reef II, the John G. Shedd Aquarium's research vessel. The Coral Reef II is a ship used for studies at sea, and Plaintiff was the first and only woman hired onto its crew.

2. Unfortunately, but not unforeseeably, the Coral Reef II's historically all-male crew created an unapologetically sexist working environment, in which degrading comments about women were the norm and the Captain

openly admitted to finding women unsuitable for the position of his First Mate.

3. Equally predictably, the misogyny extended to the crew's treatment of Plaintiff, their only female colleague. Plaintiff was reprimanded for things that her male co-workers openly did without rebuke. When Plaintiff complained about the double standard, her workload increased and she was fired.

4. The Coral Reef II's toxic culture physically endangered Plaintiff and other crewmembers. The vessel's Captain took a dismissive approach to safety concerns, and Plaintiff was tasked with dangerous assignments. On Plaintiff's first trip—a "trial run" for a potential permanent position—the Captain ordered Plaintiff to jump from the deck to a concrete dock, the impact of which caused Plaintiff severe and likely permanent bone and nerve damage to her feet. Instead of providing Plaintiff with medical attention, the Captain and his First Mate urged Plaintiff to continue her duties.

5. Plaintiff now brings this action against Shedd Aquarium Society, her former employer and the owner of the Coral Reef II, to hold it accountable for its discrimination, retaliation, and dereliction of the duties it owed to Plaintiff as a mariner on its vessel.

**Parties, Jurisdiction, and Venue**

6. Plaintiff Susan Catherine Edgerton is a resident and citizen of North Carolina.

7. Defendant Shedd Aquarium Society d/b/a John G. Shedd Aquarium, a non-profit incorporated under Illinois law, is an Illinois citizen.

8. This Court has subject-matter jurisdiction over the statutory claims under 28 U.S.C. § 1331 (federal-question jurisdiction) and over the maritime-law claims under 28 U.S.C. § 1367(a) (supplemental jurisdiction) or 28 U.S.C. § 1333 (admiralty jurisdiction). This Court also has diversity jurisdiction over the action. 28 U.S.C. § 1332(a).

9. Venue is proper under 28 U.S.C. § 1391(b)(1) because Defendant resides in this district.

10. Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission on December 3, 2019. She received a Notice of Right to Sue from the EEOC dated April 26, 2021.

**Facts**

11. The Shedd Aquarium Society ("Shedd") owns and operates the John G. Shedd Aquarium in Chicago and the Aquarium's research vessel, the R/V Coral Reef II.

12. The Coral Reef II facilitates field scientists' open-water studies and hosts students on oceanic expeditions. It docks in Miami, Florida but spends the majority of the year at sea throughout the Bahamian archipelago in the Atlantic Ocean.

13. The Coral Reef II is staffed by a three-person crew, all of whom live on board the vessel. For most of its 79-year history, the ship has had an all-male

crew. The Coral Reef II's predecessor vessel also never had a woman in its crew.

14. Prior to Plaintiff's employment, a woman unsuccessfully applied to a crew position on the Coral Reef II. The woman then filed a complaint against Shedd, alleging that the decision not to hire her was based on her sex. Shedd ignored this complaint.

**Plaintiff Comes Aboard**

15. Shedd hired Plaintiff in April 2018, making her the first female crewmember aboard a Shedd research vessel.

16. Plaintiff served as the Coral Reef II's Hospitality Coordinator. In that role, she was responsible for overseeing food service, housekeeping, and hotel operations on the boat in addition to assisting with the vessel's departure, arrival, and maintenance.

17. When Plaintiff was hired, the Coral Reef II's crew included Captain Zoltan Bobick and First Mate Kip Mors. Mors quit in March 2019, and he was replaced by James Wyse, who functioned as Relief First Mate. Bobick, Mors, and Wyse are all men and were friends before working together.

18. Captain Bobick was Plaintiff's supervisor during her tenure on the Coral Reef II. He instructed Plaintiff that all grievances must go through him.

**Plaintiff Repeatedly Subjected to Sexist Commentary and Conduct**

19. Throughout her time aboard the Coral Reef II, Plaintiff worked in an environment profoundly hostile to women, in which she was routinely

subjected to sexist comments that degraded and objectified women. The following instances serve as examples:

a. On a morning in November 2018, Plaintiff was sweating after having gone on a run. First Mate Mors looked at Plaintiff's breasts and said, "What, are you lactating?"

b. First Mate Wyse responded to Plaintiff sticking out her tongue by saying, "That's the first action I've gotten all week."

c. First Mate Mors called the woman who filed sex discrimination claims against Shedd a "fucking cunt," and Captain Bobick referred to her as a "fucking bitch." First Mate Mors remarked, "How could we be sexist? We hired a woman," in reference to Plaintiff.

d. First Mate James was offended by something a female college student said, and he repeatedly referred to the student as a "cunt" around Plaintiff. This occurred in the presence of Captain Bobick.

e. Captain Bobick referred to a female Shedd employee as a "cunt" when speaking to Plaintiff.

20. Captain Bobick also expressly stated that he would discriminate against women in hiring. In March 2019, a search was underway to find a replacement First Mate after Mors's departure. Plaintiff suggested that Captain Bobick consider a woman she knew who would be a good candidate. Captain Bobick responded that he would never hire a woman into that position.

21. These comments were distressing to Plaintiff and caused her to spend a great deal of energy avoiding them, which interfered with her ability to do her assigned work.

**Plaintiff Severely Injures Her Feet as a Direct Result of Captain Bobick's Orders**

22. On June 9, 2018, the Coral Reef II was docking at a port in the Bahamas. Captain Bobick commanded Plaintiff to jump from the vessel's deck to the concrete dock 15 feet below in order to help with anchoring.

23. Plaintiff had jumped from boat to dock only once before, but she trusted her Captain's judgment and complied with his order, while supervised directly by the First Mate and the Captain, who was standing on the Bridge.

24. The impact of the jump severely injured both of Plaintiff's feet—it broke a bone in her right foot, chipped the bone of her left heel, collapsed the arches in both feet, tore a ligament in her right ankle, and caused bone contusions and nerve damage in both heels.

25. In significant pain, Plaintiff returned to the boat and stated that she needed to see a doctor for an X-ray. First Mate Mors replied that Plaintiff could not have been hurt that badly if she was able to walk, and Captain Bobick suggested that Plaintiff tough it out and work until the end of the vessel's trip.

26. Captain Bobick and First Mate Mors succeeded in pressuring Plaintiff to finish out the remaining three days of the trip without receiving urgently needed medical attention.

27. Plaintiff's injuries were not treated until the trip concluded and the Coral Reef II returned to Miami on or around June 12, 2018. Once in Miami, Plaintiff took herself to an urgent care facility.

28. Plaintiff was unable to return for duty on the Coral Reef II until September 2018 due to the injuries she sustained from the jump.

29. Plaintiff's injuries are ongoing, including nerve damage in her feet that is potentially permanent.

**Captain Bobick Exposes Plaintiff to Dangerous Fumes and Disparately Disciplines Her; Plaintiff Opposes the Discrimination**

30. In February 2019, Captain Bobick tasked Plaintiff and First Mate Mors with painting the Coral Reef II's deck. The two were required to use two-part paint, which was listed as a chemical hazard in the Material Safety Data Sheet kept in a notebook on the vessel and has widely known negative health effects.

31. Despite the respirator she was wearing, Plaintiff began to feel dizzy and suffered a severe headache—all side effects of inhaling the paint's powerful fumes. Plaintiff told First Mate Mors that she thought she might pass out and so needed to take a break, but the First Mate pressured Plaintiff to continue on.

32. Plaintiff's sickness from the fumes continued, forcing her to eventually take the earlier-denied break. On her walk back to the boat to continue painting, Captain Bobick approached Plaintiff, scolding and criticizing her for the hiatus. She responded by insisting that the break was needed because the

paint was making her ill and stating that the task was unsafe. Captain Bobick dismissively retorted that he had done the painting himself before with no trouble. Under pressure from Captain Bobick, Plaintiff returned to painting and continued to be ill as a result.

33. Captain Bobick later ordered First Mate Mors to correct a flaw in the paint job. First Mate Mors became upset, violently threw down his paint-roller, and shouted at Captain Bobick, "Fuck this, man. You paint it yourself." Captain Bobick ordered First Mate Mors and Plaintiff to go home for the day.

34. Captain Bobick spoke with both First Mate Mors and Plaintiff the following day. Captain Bobick scolded Plaintiff for how she had spoken to him the day before, stating that she must never speak that way to him again or argue with his decisions.

35. Plaintiff asked whether First Mate Mors's comments merited the same reprimand. Captain Bobick responded that First Mate Mors did not require a reprimand because he was just voicing his frustration, whereas Plaintiff was arguing with him.

36. Plaintiff protested. She pointed out to Captain Bobick that he was subjecting her to a gender-based double standard and singling her out.

**Captain Bobick Increases Plaintiff's Workload**

37. In March 2019, First Mate Mors suddenly quit. Captain Bobick ordered Plaintiff to take over the First Mate's duties—including cleaning the engine room. First Mate Mors had left behind a trail of blood that Plaintiff was

required to clean. First Mate Mors texted Plaintiff to say, "Don't worry. I've been tested."

38. This was not the only time Plaintiff was required to work outside of her job description. Multiple times a week, Captain Bobick instructed Plaintiff to perform her male co-workers' responsibilities. For example, Captain Bobick once told Plaintiff to stop preparing dinner—one of her job responsibilities—to unclog a toilet because the First Mate was occupied with recreational fishing. Plaintiff was the only employee who was required to take on others' work. None of her male colleagues received such instructions. In fact, one male colleague stated openly that he wouldn't "touch a dish or a trash bag."

39. As Plaintiff's workload began to mount, she expressed concern to Captain Bobick and requested help. Her requests were ignored.

**Plaintiff Disciplined for her Dress**

40. In April 2019, Captain Bobick gave Plaintiff a performance review. He informed Plaintiff that she dressed inappropriately. The comment was based on the fact that Plaintiff's underwear was briefly exposed one day when she bent over to hoist up the anchor.

41. Captain Bobick knew that First Mate James's undergarments were frequently on display but never reprimanded him for his dress.

42. Captain Bobick's discriminatory discipline was intentional and based on Plaintiff's gender. As another example, Captain Bobick reprimanded

Plaintiff for laughing too loudly in the galley, yet he did not criticize raucous male crewmembers.

**Plaintiff Terminated**

43. Unbeknownst to Plaintiff, Captain Bobick had begun adding notes to Plaintiff's personnel file, falsely accusing her of misconduct. Captain Bobick began doing this in February 2019—around the time Plaintiff complained that he was subjecting her to a gender-based double standard.

44. In a particularly egregious instance, Captain Bobick orchestrated a ruse to obtain false material with which to paper Plaintiff's personnel file for termination. Captain Bobick instructed Plaintiff to go ashore and run an errand. Plaintiff responded that she still needed to clean the galley and requested to turn to the errand later. Captain Bobick refused and told Plaintiff not to worry about cleaning, so Plaintiff left the boat to fulfill his request. While Plaintiff was gone, Captain Bobick took photographs of the mess in the galley and submitted them to Human Resources as purported evidence of Plaintiff's evasion of her cleaning responsibilities.

45. Captain Bobick's scheme was fulfilled on May 30, 2019, when he informed Plaintiff that Shedd had terminated her employment.

46. Plaintiff asked the reason for her termination, and Captain Bobick refused to provide her with one. Instead, Captain Bobick stepped toward Plaintiff in a threatening manner and commanded her to leave the property immediately.

**Count I**
**Title VII, 42 U.S.C. § 2000e-2(a)(1)**
**Sex Discrimination – Disparate Treatment**

47. Plaintiff incorporates by reference the facts alleged above.

48. Plaintiff is female.

49. Because of Plaintiff's sex, Shedd treated Plaintiff differently than her male co-workers and altered the terms and conditions of her employment, including overburdening her with work, disciplining her for things that men were not disciplined for, and, ultimately, terminating her employment.

50. Shedd's discrimination against Plaintiff on the basis of her sex was intentional.

51. Plaintiff was harmed as a result of Shedd's discrimination.

**Count II**
**Title VII, 42 U.S.C. § 2000e-2(a)(1)**
**Sex Discrimination – Hostile Work Environment**

52. Plaintiff incorporates by reference the facts alleged above.

53. Because of Plaintiff's sex, Shedd subjected Plaintiff to unwelcome gender-based harassment.

54. The harassment was pervasive and severe. It consisted of frequent and persistent sexist commentary, including language that sexually objectified and degraded both Plaintiff and other women.

55. The hostile work environment was abusive and interfered with Plaintiff's ability to do her job.

56. Captain Bobick was Plaintiff's supervisor, and he was a perpetrator of the harassment against her.

57. Plaintiff was harmed as result of the hostile work environment.

**Count III**
**Title VII, 42 U.S.C. § 2000e-3(a)**
**Retaliation – Adverse Actions**

58. Plaintiff incorporates by reference the facts alleged above.

59. Plaintiff engaged in a protected activity when she complained to Captain Bobick that he was discriminating against her based on her sex, referencing the double standard that he applied to her behavior versus that of her male co-worker.

60. In retaliation for Plaintiff's opposition to Captain Bobick's discriminatory conduct, Shedd took adverse actions against Plaintiff, including overburdening her with work, disciplining her without cause, and, ultimately, terminating her employment.

61. Plaintiff suffered harm as a result of Shedd's retaliation.

**Count IV**
**Jones Act, 46 U.S.C. § 30104**

62. Plaintiff incorporates by reference the facts alleged above.

63. Plaintiff spent the majority of her time in service of the Coral Reef II while it was in navigation, transporting researchers and students.

64. Shedd breached its duty to provide Plaintiff with a reasonably safe workplace, including by requiring Plaintiff to perform unreasonably dangerous tasks.

65. Shedd also breached its duty to provide Plaintiff with prompt and adequate medical care.

66. At all relevant times, Captain Bobick and First Mate Mors were acting within the scope of their employment with Shedd.

67. Plaintiff was injured, including sustaining severe damage to her feet, and placed in the zone of danger as a result of Shedd's negligence.

**Count V**
**Unseaworthiness**

68. Plaintiff incorporates by reference the facts alleged above.

69. Shedd owns the Coral Reef II.

70. Shedd failed to make the Coral Reef II reasonably fit and safe for sea.

71. The Coral Reef II's Captain was not fit, as demonstrated by Captain Bobick's repeatedly subjecting Plaintiff to unreasonably dangerous working conditions.

72. Plaintiff was injured, including sustaining severe damage to her feet, and placed in the zone of danger as a result of the Coral Reef II's unseaworthiness.

**Count VI**
**Maintenance and Cure**

73. Plaintiff incorporates by reference the facts alleged above.

74. Plaintiff suffered an injury in service of the Coral Reef II, including severe injuries to her feet and emotional injuries due to pervasive harassment.

75. Shedd did not provide Plaintiff with funds sufficient to cover her shelter while she recovered from her injuries. Nor did Shedd provide Plaintiff with funds sufficient to cover her medical expenses in treating her injuries.

**Relief Requested**

For these reasons, Plaintiff respectfully requests judgment in her favor, including maintenance and cure; compensatory damages in an amount to be determined at trial; punitive damages; attorneys' fees, costs, and expenses; pre-judgment and post-judgment interest; lost wages and benefits; emotional distress damages; and any other relief this Court finds just and proper.

**Demand for Jury Trial**

Plaintiff, through her counsel, Salvatore Prescott Porter & Porter, PLLC, demands a jury trial in the above-captioned matter.

Dated: May 6, 2021

By: */s/ Jennifer B. Salvatore*

SALVATORE PRESCOTT PORTER & PORTER, PLLC

Jennifer B. Salvatore
105 East Main Street
Northville, MI 48167
(248) 679-8711
salvatore@sppplaw.com

Andrea L. Evans
1010 Davis Street
Evanston, IL 60201
(312) 283-5711
evans@sppplaw.com

*Attorneys for Plaintiff*